### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08 CR 888 |
| v. | Judge James B. Zagel |
| WILLIAM F. CELLINI, SR. | |

### MEMORANDUM OPINION AND ORDER

The prosecution seeks disqualification of defense counsel. The indictment charges William F. Cellini, Sr. with various misdeeds committed in connection with state pension funds and state officials (both elected and appointed). A thumbnail version of the case is this:

The state teacher's retirement system has $30 billion to invest, and private firms want the job of managing a portion of those funds. Who gets that business is decided by the system's board of trustees, eleven members of which are either appointed by the Governor or elected by the present and future beneficiaries of the system. The defendant, it is charged, had influence with the board and was, himself, a political fund raiser. As part of an alleged conspiracy (including government officials and other political fund raisers), the defendant is said to have tried to obtain political contributions in exchange for allowing $220 million of teacher pension funds to be under the management of Thomas Rosenberg's firm, Capri Capital. Rosenberg's response to the attempt was to threaten to expose Cellini, which led the conspirators to a decision to go forward with the $220 million allocation in order to forefend Rosenberg's reporting of the conversation to the authorities. The conspirators allegedly decided not to give any further funds to Capri, and Cellini called Rosenberg to tell him that none of Cellini's "group" had anything to do with the initial failure to allocate the funds to Capri. The board of trustees was not advised of the alleged scheme.

The indictment asserts the existence of a long-running scheme to use pension funds to leverage political contributions and other benefits.  An alleged example is a series of actions taken to defeat proposals to consolidate pension funds and to ensure reappointment of a friendly board member.  A consolidation might dilute the ability of the persons named in the indictment to influence the teacher's pension board.  It is alleged that Cellini and others offered to direct funds to asset managers selected by individuals who might be able to help defeat fund consolidation and influence board appointments.

Thomas Rosenberg will be a significant witness in this case.  I infer from the record before me and the proceedings in a case before another judge that one or more of the alleged co-conspirators will also testify as part of the prosecution case.

Rod Blagojevich, former Governor of Illinois is a potential witness as well since he appears (in light of statements made in respect to other cases pending before other judges) to be one of the alleged conspirators.

Both Rosenberg and Blagojevich have been clients of Winston & Strawn, the firm whose partners represent Cellini.

The rules defining conflict of interest are generally applicable in all cases.  So too is the rule which permits counsel to proceed if all clients who are the source of the conflicts waive the rights they have to preclude conduct that violates the conflict rules.  There is a waiver of conflicts by Cellini, and it is broad enough to permit his current counsel to continue representing him.  There

is no such waiver from either Rosenberg or Blagojevich. If this were a civil case, that might be the end of the matter.[1]

While the rules may be universal in application, they are not enforced in the same way in criminal cases. As Judge Bauer wrote in the leading opinion in this Circuit:

> A separate line of cases address a criminal defendant's right to the counsel of his choice. Unlike a civil defendant, a criminal defendant's choice of his counsel is protected by the sixth amendment. . . . [citations omitted] . . . Given the weight of the defendant's constitutional right to the counsel of his choice and the trial court's ability to protect the attorney-client privilege and prevent the appearance of impropriety, we refuse to apply to a criminal case the holdings in . . . civil cases. . . . We also decline to adopt a *per se* rule of disqualification based on Canons 4 and 9 of the A.B.A. Code of Professional Responsibility when an actual conflict of interests exists. We agree with the Second Circuit that the decision to disqualify an attorney in a criminal case requires an evaluation of the interests of the defendant, the government, the witness and the public in view of the circumstances of each particular case.

*United States v. O'Malley,* 786 F.2d 786, 789-790 (7th Cir. 1986).[2]

Balancing tests require case specific decisions and so both sides find general language to support their arguments and rarely find a case directly on point. Compare *United States v. Alex,* 788 F.Supp. 359, 362 (N.D. Ill. 1992) with *United States v. Carter*, No. 2:08-CR-11-RL, 2008 WL

---

[1] I say "might" because I make no finding that there is or is not a conflict sufficient to disqualify Cellini's counsel if this were a civil case.

[2] An inherent difficulty in conflicts question arises because we consider the interests of persons who are not parties to the case and are rarely heard directly by the court. Cellini, who is a party, has waived conflicts. The Government does have enough of an interest for standing to raise the objection because the effectiveness of its witnesses might be impaired if they are cross-examined by a lawyer who, in confidential communications, has learned of matters the witness does not want disclosed. The Government may also have general standing to protect the rights of witnesses.

3992253 (N.D. Ind. Aug. 27, 2008) on the weight to be given to the interests of a witness once represented by defense counsel.[3]

The Government asserts that current defense counsel has two conflicts: one with Rosenberg and another with Blagojevich. I discount the significance of Blagojevich who has not agreed to testify and whose consistent public position is that he has done nothing wrong and intends to dispute all allegations against him to the end. While it is possible this might change, there is no reasonable expectation now that defense counsel's representation of Blagojevich or his campaign committee will be of any significance in the trial of this case.

Rosenberg will be an important witness, and his relationship with Winston & Strawn and its partners does matter. I infer from the papers, the oral argument and the circumstances of this case that Rosenberg has been a client of the firm on some occasions. I find that he was not a client with respect to the matters in this case. He sought representation but the firm declined to provide it.[4]

That the firm declined representation does not alone control the decision here. Rosenberg was not turned away at the reception desk. He was interviewed and told Dan Webb, who appears

---

[3] The Government argues that a victim of a crime has a legally cognizable interest in seeing a defendant convicted, an interest which is materially adverse to the interest of the accused and a good reason for protecting the witness in cases like these. I accept that this is an appropriate consideration under *United States v. O'Malley*. Rosenberg's status in this case is not necessarily that of victim. The indictment says so but he will testify under a grant of immunity which leaves open the possibility that he is not a victim with a deep interest in a successful prosecution. It is not shown that his status requires that I give a heightened weight to his interests.

[4] There were a number of billable hours spent by Winston & Strawn attorneys in meeting with Rosenberg. Since representation was declined, the bills were neither tendered nor paid. No engagement letter was executed and Rosenberg was referred to another attorney. Few law firms would accept someone as a client before conducting a conflicts analysis, and such analysis often requires preliminary inquiry into the nature of the problem the prospective client brings to the firm.

to be lead counsel for Cellini, a good deal about his role in the events which form a significant part of the charges laid against Cellini. What Rosenberg said to Winston & Strawn attorneys is privileged.

Winston & Strawn contends that privilege was waived and, surely, there has been some waiver. Rosenberg told the prosecutors that he had spoken to Dan Webb about the facts alleged here. The indictment is fairly detailed in its description of the offense. Rosenberg therefore disclosed some of what he had told Winston & Strawn.[5] I do not conclude that he disclosed to prosecutors everything of significance he revealed in conversations with Winston & Strawn. There is a high probability he did. The prosecutors would be dismayed to learn that an important witness had withheld something from them. But there remains the possibility that Rosenberg may have shared confidences that might be useful on cross-examination and not revealed to prosecutors. I draw an example from a case of many years ago in which a client told his lawyer that he would have gone along with the plan if he thought he "wouldn't be caught." I accept, for purposes of this ruling, that some of Rosenberg's statements retain their privileged character. There is a legitimate concern for the prosecutor and, perhaps, for Rosenberg which must be put on the scales.

On Cellini's side of the balance is his constitutional right to choose his own lawyer and the fact that losing that lawyer would have unusually serious consequences for a defendant in Cellini's position.

---

[5]It is possible, but not likely, that what was said to Winston & Strawn lawyers may be used to impeach Rosenberg at trial but for that to occur, there would have to be a showing of exactly what Rosenberg told prosecutors he had discussed with those lawyers. If an attempt to impeach Rosenberg were made, I would have to determine precisely the scope of the waiver and whether as to statements for which the privilege is waived the impeachment is proper under traditional standards and the strictures of Rule 403 of the Federal Rules of Evidence. I do not find that there is a realistic possibility that Dan Webb would ever have to take the witness stand in this case.

This prosecution, as is common in these kinds of cases, took years to prepare. Investigations are difficult. The offenses alleged here are not witnessed by ordinary people who happen to be on the scene when the crime occurred. Those who commit such offenses are usually persons of accomplishment who understand the need for secrecy. Enormous volumes of records have to be analyzed, and the acts that constitute the offense have at least a family resemblance to lawful acts of petitioning government and its officials for assistance in legitimate endeavors. These prosecutions are years in the making. But they do not go unnoticed by their targets, and defense lawyers become involved early on. Advocacy does not begin with the filing of the charge, it begins with efforts to persuade prosecutors not to bring a charge or settle for some remedy short of full scale prosecution. All of this occurred here.

What Cellini loses if he loses his lawyers are three in number:

1. A speedier trial than he could have with his current lawyers.

2. A relationship of trust in his lawyer formed over the long course of investigation.

3. His lawyer's knowledge of the attitude, methods and character of those who will prosecute this case.

Based on the nature of the charges, the information in the pre-trial service officer's report and the process by which this case was brought to indictment, I conclude the defendant does want a relatively speedy trial.

It is quite possible that Cellini can find a highly competent defense counsel who he could trust, but it is not correct to assume that trust between a lawyer and a client facing charges like these arises quickly and as a matter of course. Assuming the best, it will be some time before Cellini (or, for that matter, any reasonably sophisticated person in his position) reposes complete

trust in his lawyer.  Trust of a client in major cases has to be earned.  So too does the lawyer's trust in his or her client.  A speedy trial, if one can even be managed with new counsel, will leave the defendant at risk of proceeding without that trust existing.  And the new lawyer will not have a good feel for how the particular prosecutors in this case will choose to approach the case or confront the defense.  Knowing your opponent is of great value in any trial.

     Cellini thus has a good deal to lose if he cannot keep his current lawyers.  And, unlike the situation in some of the reported cases, the Government bears some responsibility for the difficulties Cellini will face.  Since June 2005, the Government has known of Winston & Strawn's representation of Cellini and since September 2008 had engaged in discussions with Dan Webb about the nature of the charges and the sufficiency of evidence.  The Government also knew, in February 2005, that Rosenberg was seeking representation by Winston & Strawn in connection with the investigation that resulted in this indictment.  And since the Government knew that Rosenberg was seeking representation, they had good reason to believe that Rosenberg would have had discussions with his prospective lawyers about the matters at issue.   More telling is the fact that the prosecutors suggested to Winston & Strawn that it had a conflict because it could not represent both the Blagojevich campaign committee and Rosenberg.  There is no indication that the Government ever raised the issue of a conflict arising from the investigation of Cellini.

     I do not think the Government has a legal duty to suggest that conflicts might exist.  But I do find that, in a case where they suggest that conflicts existed with respect to representation of one possible defendant (now a witness), some of the responsibility for Cellini being in the position he is in today rests with the Government.  This is particularly so since they were aware that Winston &

7

Strawn may not have agreed there was a conflict but, nevertheless, declined Rosenberg's request and sent him to another lawyer.

The balance of interests here weighs heavily in favor of denying the motion to disqualify. The prejudice to Cellini is substantial and possibly irreparable. The prejudice to the prosecutors and to Rosenberg can be eliminated by the accepted method of having the cross-examination of Rosenberg conducted by a lawyer who is not from Winston & Strawn and barring Winston & Strawn from disclosing any arguably privileged information it had from Rosenberg to that lawyer. Cellini's lawyers have also offered to have any Winston & Strawn lawyers who had conversations with Rosenberg to absent themselves from the courtroom when Rosenberg is examined. This I find is unnecessary – all that is required is that the cross-examiner be barred from consulting with those lawyers during the course of the examination. There are methods that would protect whatever interest either the prosecutors or the witness may have in preserving whatever arguable privilege there is as to those Rosenberg statements for which the privilege was not waived. *See United States v. Britton,* 289 F.3d 976 (7th Cir. 2002).

The motion to disqualify is denied.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: February 12, 2009