IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States, | ) | |
| | ) | |
| v. | ) | No. 08 CR 888 |
| | ) | |
| William F. Cellini, Sr., | ) | Hon. James B. Zagel |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CHICAGO TRIBUNE'S MOTION TO INTERVENE AND FOR IMMEDIATE ACCESS TO PUBLIC RECORDS UNDER SEAL**

The news media's First Amendment and common law rights to obtain access to judicial proceedings and records, and to report to the fullest extent possible on what transpires in the courtroom, is long-standing and especially critical in criminal proceedings.  As a part of our country's rich history of public access to criminal trials and fundamental belief that transparency is at the heart of justice, the United States Supreme Court has long recognized a First Amendment and common law *presumption* of public and press access to criminal court proceedings – including specifically pretrial pleadings and hearings, which often are as important as the trial itself.  Those rights, and the public's interest in their vindication, are of paramount importance in this case.

The Defendant, William Cellini, is a legendary Illinois political power broker; the indictment alleges that he participated in a conspiracy to "shake down" campaign contributions for then-Governor Blagojevich by making such contributions a condition of doing business with the State.  The public has an undeniably strong interest in receiving information about a case alleging public corruption at the highest levels of State government.

Intervenor Chicago Tribune Company ("Tribune") has recently learned that Defendant's pretrial motion to suppress wiretap recordings and related briefs and exhibit materials have been filed <u>wholly</u> under seal in this case.  Such wholesale sealing is almost never appropriate.  <u>In re</u>

<u>Krynicki</u>, 983 F.2d 74 (7th Cir. 1992).  To fairly and accurately report on this important public

matter, Tribune seeks to exercise its First Amendment and common law right to obtain access to

and copy all such documents and materials filed under seal or, at the very least, obtain access to

redacted copies.

     While recognizing the right of public access is not absolute, Tribune respectfully submits

that it cannot be set aside except in the face of express findings by this Court that compelling

interests require otherwise.   Not having seen the sealed pleadings, Tribune is at a distinct

disadvantage.  Yet, importantly, this Court is "the primary representative of the public interest in

the judicial process," <u>Citizens First Nat'l Bank v. Cincinnati Ins. Co.</u>, 178 F.3d 943, 945 (7th Cir.

1999), and thus must carefully scrutinize the parties assertions' regarding the need for secrecy

here.  This Court is familiar with that role, and has weighed these important public access issues

in prior cases, including <u>United States v. Calabrese</u>, No. 02 CR 1050, a high-profile prosecution

of the "Chicago Outfit."[1]  And despite what the parties here may believe, even if the Court were

to find compelling interests are genuinely present, the public's rights of access may be limited

<u>only</u> to the extent necessary to vindicate those interests, and the Court must employ the least

restrictive alternatives to sealing, such as, e.g., redactions, consistent with the First Amendment.

     Tribune respectfully requests that its motion be granted and access provided immediately.

## FACTUAL BACKGROUND

     ***The Indictment.***  Defendant Cellini is one of the most powerful men in Illinois politics,

and a prolific campaign fund-raiser for both Republican and Democratic governors, including

former Gov. Blagojevich.

          William Cellini has spent four decades as Illinois' ultimate insider,
          cozying up to Republicans and Democrats alike as he wielded

---

[1] The criminal case now before the Court is not an organized crime prosecution, and does not raise the particular security concerns that are sometimes posed by those cases.

power and influence while trying to stay out of the spotlight.
But the spotlight found Cellini on Thursday when a federal grand
jury indicted the millionaire Springfield businessman and pulled
him into the center of the ongoing probe of corruption in the
administration of Gov. Rod Blagojevich.

(Coen, et al., "State's ultimate insider indicted," *Chicago Tribune*, Oct. 31, 2008.)

On October 30, 2008, a grand jury indicted Cellini, alleging that he conspired with
convicted influence-peddler Antoin "Tony" Rezko and others to extort an investment firm into
making a $1.5 million contribution to Gov. Blagojevich's campaign as a condition of getting
state business.  (Orig. Indictment [Docket #1], *passim*.)  A Superseding Indictment was filed
April 2, 2009 (Docket #37), naming Blagojevich, his chief of staff, other officials and "Friends
of Blagojevich" -- and Cellini -- as Defendants.  (Id., pp. 1-5.)

The Superseding Indictment alleges that Cellini was part of a conspiracy to use "the
powers of the Office of the Governor and of certain state boards and commissions" to obtain
"financial benefits for themselves and others, including campaign contributions" for Blagojevich.
(Id., p. 11, ¶ 7.)  "Members of the conspiracy exercised their power and influence over Illinois
state government for the purpose of benefiting defendant ROD BLAGOJEVICH and his family
members, Friends of Blagojevich, and members of the conspiracy and their associates."  (Id., p.
12, ¶ 9.)  The alleged means by which the conspiracy sought to achieve these corrupt goals
included the allegations against Cellini in the Original Indictment (i.e., extortion of campaign
contributions).  (Id. p. 13, ¶ 9(e); pp. 22-24, ¶¶ 13-18; Counts 13-15, *passim*.)[2]

The allegations against Cellini are set forth in great detail in the Superseding Indictment,
including references to telephone and other conversations between Cellini and the other

---

[2]  "It was further part of the conspiracy that in or around the summer and fall of 2004, in an effort
to conceal the conspiracy, defendant CELLINI, Rezko and others discussed the possibility of
removing the U.S. Attorney for the Northern District of  Illinois in an effort to stop any
investigation into the co-conspirators and others."  (Id., Count 13, ¶ 26.)

conspirators on specific dates during May 2004 (e.g., Count 13, ¶¶ 12-22); these detailed allegations clearly appear to have been drawn from wiretap evidence.

The allegations in this case were also presaged at the 2008 Rezko trial, where undercover recordings of conversations of Cellini and others were played in open court. The content of these recordings was widely reported; "Cellini was caught on secretly made tapes talking . . . about the [alleged shakedown]. In one tape played at Rezko's trial, Cellini was heard saying Blagojevich -- 'the big guy' -- knew of the plot." (Korecki, "Cellini indicted by federal grand jury in state corruption probe," *Chicago Sun-Times*, Oct. 31, 2008; *see also* "State's ultimate insider indicted," *Chicago Tribune*, Oct. 31, 2008 ("At Rezko's trial this year, Cellini was described as a co-conspirator, and his voice was heard on federal wiretaps discussing the extortion scheme").)

***The Sealed Documents.*** Tribune and its counsel recently learned that Defendant's pretrial Motion to Suppress the fruits of telephone wire interceptions and related documents, including the parties' briefs on the motion, have been filed with the Court wholly under seal ("Documents Under Seal"). The Motion to Suppress and related documents are entirely restricted and have not been made public in even a redacted form, making it impossible for the public to understand what specific relief the motions are even seeking -- let alone the basis for and arguments in support of, and against, the relief sought.

Defendant Cellini filed an unopposed and rather vague Motion for Leave to file his Motion to Suppress under seal. (Docket #34.) That unopposed Motion for Leave was heard April 16, 2009, at Defendant's arraignment, along with other matters. The Court granted leave to file the Motion to Suppress under seal without any discussion or analysis. (Tr., 4/16/09, p. 5:20-21 ("the unopposed motion for Leave to File Motion to Suppress Under Seal is granted"); Docket # 69.) Again, without access to any part of the Motion to Suppress itself, and given the

- 4 -

generic nature of the Motion for Leave to seal, it is difficult to even ascertain the actual nature of the documents and exhibits that are sealed.

Even though the Court did not state its rationale on the record, the Government asserts that the Court "granted Defendant Cellini leave to file his Motion To Suppress under seal in large part because the motion attached and referred to a series of government filings relating to wiretaps that remained under seal," and sought to file its "response to that motion under seal for the same reason."  (Docket #82.)  On May 11, 2009, the Court granted the Government's motion for leave to file its response under seal.  (Docket #86.)

Clearly, when the parties presented their mutually "unopposed" sealing motions, the Court did not have the benefit of the arguments and legal precedent on behalf of the public and media -- presented now -- in support of the important constitutional and common law rights of public access.

**Intervenor, Chicago Tribune.**  Tribune publishes the daily newspaper, *Chicago Tribune*, which is circulated nationwide and reports on numerous topics and events in the Chicago metropolitan area and Illinois, as well as globally.  For more than a century, *Chicago Tribune* has worked painstakingly to provide comprehensive, accurate accounts of newsworthy events and cases of interest to the public.  Since 1932, its journalists have won twenty-four Pulitzer Prizes. *Chicago Tribune* recently has received numerous accolades for its various series of investigative reports on matters of public interest.

Due to Defendant Cellini's notoriety, connections with Messrs. Rezko and Blagojevich, and the serious nature of these corruption allegations, this case has not surprisingly been the subject of intense press and public interest.  Both the *Chicago Tribune* and other news media have widely reported on Defendant's trial.

## ARGUMENT

**I.    THE TRIBUNE IS ENTITLED TO INTERVENE TO PROTECT THE PUBLIC RIGHT OF ACCESS.**

The Supreme Court and the Seventh Circuit have recognized that those who seek to assert the right of public access to court proceedings and judicial records have a right to be heard in a manner that gives full protection of the asserted right.  See, e.g., Globe Newspaper Co. v. Super. Ct. for Norfolk, 457 U.S. 596, 609 n.25 (1982) (media and public "'must be given an opportunity to be heard'" on questions relating to access) (citation omitted); In re Associated Press, 162 F.3d 503, 507 (7th Cir. 1998) (recognizing right of newspapers to intervene); United States v. Andreas, 150 F.3d 766, 767-68 (7th Cir. 1998) (same).  Accordingly, Tribune has a right to intervene in this case to seek access to the Documents Under Seal.

**II.   THE FIRST AMENDMENT AND COMMON LAW GUARANTEE PUBLIC ACCESS TO JUDICIAL RECORDS IN THIS PROCEEDING.**

As the United States Supreme Court says, "it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted."  Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 575 (1980).  Through a long and distinguished history of cases, the Supreme Court has recognized the presumption of access to criminal court documents, transcripts, tape recordings and other records of trial proceedings, and the right of the press to attend and view criminal proceedings and trials.  Press-Enterprise Co. v. Super. Ct. of California, 464 U.S. 501, 508-10 (1984) ("Press-Enterprise I") (finding *voir dire* proceedings presumptively open); Richmond Newsp., 448 U.S. at 564-69 (detailing history of access to open courts); Globe Newspaper Co., 457 U.S. at 605-06 (access to criminal trials).  As Justice Brennan put it,

> [T]he right of access to criminal trials plays a particularly
> significant role in the functioning of the judicial process and the
> government as a whole.  Public scrutiny of a criminal trial

> enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole.  Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process.

Globe Newsp., 457 U.S. at 606.

The right of access and presumption of openness applies to pretrial proceedings as well as to trials.  Press-Enterprise Co. v. Super. Ct. of California, 478 U.S. 1 (1986) ("Press-Enterprise II") (access to preliminary hearing); Waller v. Georgia, 467 U.S. 39 (1984) (access to suppression hearing); Nebraska Press Ass'n v. Stuart, 427 U.S. 539 (1976) (court cannot proscribe publication of information discussed at pretrial hearing).

Indeed, "suppression hearings often are as important as the trial itself."  Waller v. Georgia, 467 U.S. at 46.  "The need for an open proceeding may be particularly strong with respect to suppression hearings.  A challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor," and the public "has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny."  Id. at 47 (closure of suppression hearing "must meet the tests set out in Press-Enterprise").

It is equally "clear that the courts of this country recognize a general right to inspect and copy public records and documents."  Nixon v. Warner Communications, 435 U.S. 589, 597-98 (1978).  The courts have noted that "[t]he common law right of access is not limited to evidence, but rather encompasses all 'judicial records and documents'. . . It includes 'transcripts, evidence, pleadings, and other materials submitted by litigants. . . .'"  United States v. Martin, 746 F.2d 964, 968 (3d Cir. 1984) (citations omitted, emphasis added).

The public right of access to court proceedings and documents is well established in the Seventh Circuit.  See Grove Fresh Distrib., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994) (the "common-law right of access establishes that court files and documents should be

open to the public unless the court finds that its records are being used for improper purposes");

In re Continental Ill. Sec. Litig., 732 F.2d 1302, 1308 (7th Cir. 1984) (noting "long-recognized"

presumption of public access to judicial records which "has been characterized as 'fundamental

to a democratic state'"); In re Associated Press, 162 F.3d at 506 ("[p]ublic scrutiny over the court

system serves to (1) promote community respect for the rule of law, (2) provide a check on the

activities of judges and litigants, and (3) foster more accurate fact finding") (citing Grove Fresh,

24 F.3d at 897) (other citations omitted).

The well-established interests of public access to court proceedings and documents are of

even greater importance in a criminal proceeding, like this one, featuring one of the most

powerful figures in state politics over the past 40 years, and charges of corruption at the very

highest levels of Illinois government.  Defendant Cellini's alleged activities directly implicate

the public's trust in its public officials and system of government.

> Kent Redfield, a political scientist and expert on Illinois campaign
> fundraising, said Cellini's indictment strikes at the heart of Illinois
> politics.
>
> 'He is really an insider's insider,' Redfield said. 'He's been a major
> player over decades in this . . . "let's make a deal, everybody gets a
> piece of the action" approach toward state policy.'

"State's ultimate insider indicted,"  *Chicago Tribune*, Oct. 31, 2008.

Clearly, there is no basis for closing the hearing on the Motion to Suppress, and insofar as

Tribune is aware, the parties have not even argued it should be.  Nor, as we demonstrate below,

is there any legitimate ground for the wholesale sealing of the Motion to Suppress filings.

**III.      THERE IS NO COMPELLING NEED TO DENY ACCESS TO THE
            DOCUMENTS UNDER SEAL IN THEIR ENTIRETY.**

The presumption of access to court records can be overcome only by showing closure "is

essential to preserve higher values and is narrowly tailored to serve that interest."  Press-

Enterprise I, 464 U.S. at 510.  To justify an order denying access, a trial court must:

1.      identify an overriding interest requiring denial of access;

2.      narrowly tailor the closure order to protect that interest (and, in doing so,
        specifically consider alternatives to denying access); and

3.      make specific findings adequate to support the decision that closure is the only
        alternative that can serve that interest.

Press-Enterprise I, 464 U.S. at 510.  On the whole, "[o]vercoming the presumption [of

access] . . . is a formidable task.  The court must be 'firmly convinced that disclosure is

inappropriate before arriving at a decision limiting access.'"  Associated Press, 162 F.3d at 506

(citing Press-Enterprise I, 464 U.S. at 510).

In this case, the Court did not release any specific findings under Press Enterprise I

supporting the wholesale sealing of Cellini's Motion to Suppress wiretap evidence, as well as the

response and reply briefs.  See Grove Fresh, 24 F.3d at 898 ("when a court finds that the

presumption of access has been rebutted by some countervailing interest, that 'interest is to be

articulated along with findings specific enough that a reviewing court can determine whether the

closure order was properly entered'") (citing Press-Enterprise I, 464 U.S. at 510).  See also

Associated Press, 162 F.3d at 510 (a court's explanation "for permitting the sealing of any

material that is part of the record ought to provide a description of the documents and the reasons

for their sealing in order to permit meaningful appellate review").

The practice of sealing entire motions and briefs is wholly unsupported by the prevailing

law governing public access to judicial records.   This is true even where confidential grand jury

or Title III wiretap materials are involved.  For example, in In re Krynicki, 983 F.2d 74, 77 (7th

Cir. 1992), Judge Easterbrook held that "[a]ny part of the record that must remain secret under

Rule 6(e)(2) may be discussed in sealed appendices to the briefs, but the briefs themselves,

including all of the legal argument, belong in the public record."  In so doing, Judge Easterbrook

recognized the "constitutional command" of public access to criminal cases, while at the same

time recognizing the secrecy attenuated with matters occurring before the grand jury under Rule

6(e).  Id. at 75 (citing Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211 (1979) and also

referring to United States v. Dorfman, 690 F.2d 1230 (7th Cir. 1982), for the "same treatment of

documents, such as transcripts of wiretaps, sealed under statutory authority").

As Judge Easterbrook confirmed, "public argument is the norm even, perhaps especially,

when the case is about the right to suppress publication of information."  Krynicki, 983 F.2d at

76.  See also United States v. Andreas, 150 F.3d 766, 768 (7th Cir. 1998) (noting lower court

granted newspapers partial pretrial relief, based on Seventh Circuit precedent, in that the court

"refused to allow the parties to continue filing entire documents under seal" and instructed the

parties "to file publicly-available redacted copies"); In re New York Times Co., 828 F.2d 110,

115 (2d Cir. 1987) (holding that the sealing of Title III materials referenced in motion to

suppress papers filed with the court should be subject to the same balancing test as other judicial

records, albeit weighing heavily the privacy interests of third parties and defendants); United

States v. Gerena, 869 F.2d 82 (2d Cir. 1989) (affirming balancing made in lower court decision

that government could refer to unsuppressed Title III materials in a publicly filed brief, with the

exception of quotations from taped conversations with third parties, and modifying decision to

allow defendants notice and opportunity to object).

Filing the entire Motion to Suppress under seal – *not to mention the vague nature of the

Defendant's motion to seal itself* – does not pass muster under either First Amendment strict

scrutiny or the common law test.  Given the current posture, the actual nature of the allegedly

sensitive or confidential materials referenced in and attached to the Motion to Suppress is

unknown to the public at this time, and therefore, Tribune is at a distinct disadvantage as to

determining whether sealing any portion of the filing is even constitutionally permitted or

whether less restrictive alternatives to wholly sealing such materials are available.  What is clear

though, is that there should be an opportunity for open and meaningful public debate about the

need for secrecy itself, given the important public interest in a criminal trial such as this one, and

that any denial of access should be as limited as possible, in scope and duration, consistent with

the First Amendment.

Further, this Court is "the primary representative of the public interest in the judicial

process," Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999), and

is entrusted with ensuring the public's right of access to judicial records.  As such, it is

imperative that this Court, and not the parties, ultimately make a fact-based and detailed

determination to ensure that the Documents Under Seal are only restricted in a manner

appropriate as the *least restrictive* means necessary to protect the legitimate interests involved,

such as third-party privacy interests or fair trial concerns.  To this end, redactions for which the

parties have not articulated a specific, valid reason, or redactions for information which

Defendant prefers not be disclosed on the basis of embarrassment to Defendant alone, are

inappropriate.  Further, in considering fair trial issues, it is well-recognized that *voir dire*

examination is a sufficient device to eliminate persons from jury service who are affected by

pretrial exposure such that they could not fairly decide guilt or innocence.  See Press Enterprise

II, 478 U.S. at 15.  While these decisions are within the Court's ultimate discretion, they must be

made upon particularized findings under the Press Enterprise test outlined above.

It should also be noted that, once submitted, referred to and relied upon by the Court in

making its pretrial rulings, even confidential materials become presumptively accessible, absent

- 11 -

a showing that continued confidentiality is necessary and is the least restrictive alternative.
Krynicki, 983 F.2d at 75 ("[i]nformation that is used at trial or otherwise becomes the basis of
decision enters the public record") (citing In re Continental Ill. Sec. Litig., 732 F.2d at 1308-16);
Grove Fresh, 24 F.3d at 898 ("the right of the press to obtain timely access to judicial decisions
and the documents which compromise the bases of those decisions is essential"); Andreas, 150
F.3d at 768-69 (7th Cir. 1998) (recognizing courts' acceptance of this argument, as applied even
to confidential information considered as part of a judicial ruling, but declining to address issue,
given waiver by newspaper defendants in lower court); see also U.S. v. Foster, 2009 WL ****,
Case No. 09-1248 (7th Cir. May 1, 2009) (affirming presumption of open public inspection of
documents "that influence or underpin the judicial decision").  Thus, to the extent this Court
reviews and relies upon wiretap material -- or the application therefor -- in deciding the merits of
Cellini's Motion to Suppress, such documents and materials are presumptively accessible and
can only remain sealed upon compliance with the Press Enterprise I test.  That is only right;
when this Court makes a ruling -- particularly in a criminal case involving high-profile public
corruption charges -- it is the public's business and the public has a right to know the basis of
that ruling.

    In sum, regardless of the fact that Title III material is involved, the parties cannot
disregard the public's First Amendment right of access by sealing entire pleadings without
utilizing less restrictive alternatives or providing a constitutionally valid explanation for sealing
any part of the record in this proceeding.  Indeed, because the Documents Under Seal are part of
the public record in this case, the perception that portions of this proceeding may be conducted in
secrecy, or that information regarding the proceeding cannot be accurately reported to the public,
undermines rather than supports the judicial process.  Richmond Newsp., 448 U.S. at 572.  The
guarantee of open access to criminal court documents also facilitates the significant community

therapeutic value that comes with the knowledge that justice is being served, and provides "an outlet for community concern, hostility and emotion" in this public proceeding concerning a defendant accused of criminal activity affecting the operations of government and the public trust.  Id. at 570-71.  By totally sealing the documents, the opportunity for open and meaningful public debate about the need for closure, itself, is essentially extinguished.

## IV.    ACCESS DELAYED, IN TRUTH, IS ACCESS DENIED.

The right of access to the Documents Under Seal is critical to Tribune's ability to report completely and accurately on the case, but it is equally as important that such access is prompt. Grove Fresh, 24 F.3d at 897-98.  Newspapers are concerned with reporting contemporaneous events.  If access to accurate information is delayed, the ability and usefulness of conveying complete and accurate information will have diminished.  Id. at 897 ("[t]he newsworthiness of a particular story is often fleeting").

Delayed full access also will deny effective public scrutiny and prevent Tribune from serving its educational and fact-finding functions.  See Grove Fresh, 24 F.2d at 897 ("[t]o delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression").  The ability to obtain timely, accurate, and complete information is critical to Tribune's ability to promote public understanding of this case.

At this point in time, continuing the already delayed access to the Documents Under Seal, however briefly delayed and to whatever degree, will foster the unwholesome perception of unjustified secrecy in this public proceeding.  This perception harms the judicial process more than media access to the Documents Under Seal ever could.

## <u>CONCLUSION</u>

For the foregoing reasons, Chicago Tribune Company prays this Honorable Court will

grant Tribune access to the Documents Under Seal or at the very least redacted versions of the

Documents Under Seal and allow copying of them immediately.

Respectfully submitted,


By:   <u>/s/ Natalie J. Spears</u>
      One of the attorneys for Intervenor Chicago
      Tribune Company


James A. Klenk (#1482599)
Natalie J. Spears (#6230320)
SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower
Chicago, IL  60606
(312) 876-8000

Dated:  May 26, 2009


21407953

## <u>CERTIFICATE OF SERVICE</u>

I, Natalie J. Spears, an attorney, hereby certify that I have electronically filed a copy of

the foregoing MEMORANDUM OF LAW IN SUPPORT OF CHICAGO TRIBUNE'S

MOTION TO INTERVENE AND FOR IMMEDIATE ACCESS TO PUBLIC RECORDS

UNDER SEAL and served all ECF filers, pursuant to the district court's ECF system, on this

26th day of May, 2009.

/s/ Natalie J. Spears
                      Natalie J. Spears